

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| RICHARD THOMAS, § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 6:09-2169-HFF |
| § | |
| MATRIX SYSTEM AUTOMOTIVE § | |
| FINISHES, LLC and KEN CARROLL, § | |
| Defendants. § | |

## ORDER

### I. INTRODUCTION

Plaintiff brought this action in the Greenville County Court of Common Pleas, asserting claims for negligent misrepresentation, fraud, breach of contract, unfair trade practices, and slander of credit. The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332. Currently pending before the Court is Defendants' motion to compel arbitration and dismiss or stay the case. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of this Court that Defendants' motion to compel arbitration will be granted and the action will be dismissed without prejudice.

### II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff owns an automotive painting business called Awesome Collision, located in Greenville County. Defendant Matrix System Automotive Finishes LLC (Defendant Matrix) manufactures and sells automobile paint and related products and has its principal place of business

in Detroit, Michigan. Defendant Carroll is a marketing agent for Defendant Matrix. Following conversations between Plaintiff and Defendant Carroll, Plaintiff and Defendant Matrix entered into an agreement titled the "Refinisher Jobber Contract"(the Agreement) in August 2007. Under the Agreement, Defendant Matrix agreed to supply Plaintiff (the "Refinish Jobber") with automotive paint and Plaintiff agreed to use the same in his business.

The Agreement contains, among other things, an arbitration clause, which states that

> Any unsettled disputes arising under this Agreement shall be submitted exclusively to arbitration in accordance with the rules of the American Arbitration Association before one (1) arbitrator at the offices of the American Arbitration Association located closest to the principal offices of Matrix. The decision of the arbitrator shall be final and binding upon the parties, and judgment on the award may be entered in and enforced by any court having jurisdiction, and the prevailing party shall have filing fees and all costs (including attorneys fees) paid by the other party. Notwithstanding this arbitration clause, Distributor may, at its option, bring legal action in the county of Refinish Jobber's principal place of business.

(Defs' Mot. to Dismiss Ex. A ¶ 22.) Additionally, the Agreement contains a "Severability and Governing Law" section that provides in part that the "Agreement shall be governed by the laws of the State where the principal offices of Distributor are located." (Defs.' Mot. to Dismiss Ex. A ¶ 20.) The principal offices of distributor, Defendant Matrix, are located in Detroit, Michigan.

The relationship between Plaintiff and Defendants subsequently soured, evidently because Plaintiff was not given the exclusive territorial rights to Defendant Matrix' paint that it was expecting. Thereafter, on June 26, 2009, Plaintiff filed this action in state court. Defendants removed the case to this Court on August 14, 2009. On September 10, 2009, Defendants filed a motion to compel arbitration and dismiss and/or stay the case. Plaintiff filed his response on September 29, 2009, and Defendants filed a reply on October 7, 2009.

**III.     STANDARD OF REVIEW**

"The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2006), governs the rights and responsibilities of the parties with respect to an arbitration agreement." *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009). "Under the [FAA], a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter of the federal action decided by arbitration, unless the party seeking arbitration is 'in default' of that right." *Microstrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (internal quotation marks omitted).

The Court views a motion to compel arbitration in light of the strong federal and state policy favoring arbitration. *See, e.g., Patten Grading & Paving, Inc. v. Skanska United States Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004) (noting strong federal policy favoring arbitration); *Carolina Care Plan, Inc., v. United HealthCare Services, Inc.*, 361 S.C. 544, 550, 606 S.E.2d 752, 755 (S.C. 2004) ("South Carolina law generally favors arbitration."); *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 123, 596 N.W.2d 208, 210 (1999) (noting state's public policy "increasingly and overwhelmingly favor[s] arbitration as an inexpensive and expeditious alternative to litigation"). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). To that end, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (citation omitted). Thus, the court may

not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

## IV. CONTENTIONS OF THE PARTIES

Defendants argue that the Court should dismiss this action because all of Plaintiff's claims are subject to arbitration under the terms of the Agreement. More specifically, Defendants contend that the subject matter of the Agreement, on which all of Plaintiff's claims are based, involves interstate commerce, implicating the FAA. Defendants also insist that Plaintiff's claims against Defendant Carroll, a non-signatory to the Agreement, are so "intertwined" with the Agreement that arbitration of the claims against Defendant Carroll is also required.

In response, Plaintiff challenges the validity of the arbitration clause. First, Plaintiff insists that the arbitration clause fails for lack of mutual consideration because Plaintiff is required to arbitrate under the Agreement, but Defendant Matrix has the choice to arbitrate or file a lawsuit in the county of Plaintiff's place of business. Because the arbitration clause is allegedly one-sided, Plaintiff also argues that it is unconscionable. Finally, Plaintiff insists that the arbitration clause is unconscionable because is requires that arbitration take place in Detroit, Michigan, even though many witnesses and other evidence are located in South Carolina.

In reply, Defendants attack the choice of law cited by Plaintiff and insist that, under the terms of the arbitration agreement, Michigan and Sixth Circuit law apply. Defendants contend that when Michigan law is applied the arbitration provision is enforceable. More specifically, Defendants urge the Court to reject Plaintiff's consideration argument, insisting that consideration for the Agreement as a whole is sufficient to support the arbitration provision. Defendants also insist that the arbitration clause is not unconscionable merely because the arbitration obligations are different.

4

Finally, Defendants maintain that the arbitration clause is not unconscionable in that it requires arbitration in Detroit, Michigan because Plaintiff had alternatives when negotiating the contract and chose to enter into the Agreement with Defendant Matrix.

## V.    DISCUSSION AND ANALYSIS

   *A.    Applicable Law*

As noted above, Defendants contend that this action is governed by the FAA because the Agreement involves interstate commerce. Plaintiff fails to dispute this contention. The Court agrees that the Agreement is governed by the FAA. The FAA states,

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*.

9 U.S.C. § 2 (emphasis added). In other words,

> state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. [citation omitted] A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.

*Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). *See also Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Thus generally applicable contract defenses such as fraud, duress, or

5

unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].").

Rather than challenge the applicability of the FAA, Plaintiff draws upon the language of § 2 and insists that there are other grounds for the revocation of the arbitration clause, namely that it is not supported by consideration and is unconscionable. Under *Perry*, when assessing these arguments the Court will apply general principles of state contract law, so long as those principles were not developed to apply specifically to arbitration clauses. The question remains, however, which state's law should apply.

A federal district court sitting in diversity applies the choice of law rules of the forum state. *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999). In South Carolina, "[u]*nless the parties agree to a different rule*, the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made." *Unison Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 551-52, 436 S.E.2d 182, 184 (S.C. App. 1993) (emphasis added). Stated differently, "under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007). This rule is consistent with South Carolina's Commercial Code. *See* S.C. Code Ann. § 36-1-105 ("When a transaction bears a reasonable relationship to this State and also to another state or nation the parties may agree that the law either of this State or of another state or nation shall govern their rights and duties."). Because the Agreement signed by Plaintiff and Defendant Matrix specifies that it is to be governed by Michigan law,[1] the Court will apply

---

[1]The choice of Michigan law appears reasonably related to the Agreement, as Defendant Matrix' principal place of business is in Michigan and it shipped its supplies to Plaintiff from Michigan.

Michigan contract law in evaluating Plaintiff's challenges to the validity of the arbitration clause.

      *B.*      *Adequacy of Consideration for the Arbitration Clause*

As noted above, Plaintiff argues that the arbitration clause is unenforceable because it is unsupported by mutual consideration in that its terms are more favorable to Defendant Matrix.[2] However, this argument is inconsistent with general principles of Michigan contract law.

"Where there is no specific recitation of separate consideration for the release, but it is part of a larger contract involving multiple promises, the basic rule of contract law is that whatever consideration is paid for all of the promises is consideration for each one." *Hall v. Small*, 267 Mich. App. 330, 334, 705 N.W.2d 741, 743-44 (Mich. App. 2005). This general rule of Michigan contract law has also been applied in the specific context of arbitration clauses. *E.g., Schreier v. Solomon*, No. 277687, 2008 WL 4330192 (Mich. App. Sept. 23, 2008) ("[T]his Court's reasoning in *Hall* applies equally to an arbitration provision because the reasoning flows from the basic rule of contract law that when a contract involves multiple promises, whatever consideration is paid for all of the promises is consideration for each one.") In this case, the Agreement as a whole was supported by consideration because, among other promises, Defendant Matrix promised to provide quality automotive refinishing products to Plaintiff, and, in exchange, Plaintiff agreed to pay for those products and use them in accordance with guidelines provided by Defendant Matrix. Thus, under Michigan law, the arbitration clause is not invalid merely because there was no separate consideration for the arbitration clause.

---

      [2]Plaintiff relies on the same clause-specific arguments to support both his failure of consideration and unconscionability arguments. However, to the extent possible and for the sake of clarity, the Court will discuss each individually.

Nonetheless, these general principles fail to fully address Plaintiff's argument that the arbitration clause lacks consideration because under its terms Plaintiff must arbitrate, but Defendant Matrix has the choice to arbitrate or litigate. Under longstanding Michigan law, the fact that an agreement appears to favor one party over another will not justify a court in disturbing the terms of the agreement. *Grover v. Gratiot Macomb Development Co.*, 257 Mich. 26, 30, 240 N.W. 66, 67 (1932). Only when it is established that the consideration given is so grossly inadequate or so glaring as to shock the conscience will courts intervene. *Moffit v. Sederlund*, 145 Mich. App. 1, 11, 378 N.W.2d 491, 497 (1985). Though the Court failed to locate any Michigan decision directly addressing unequal obligations under an arbitration clause, the Sixth Circuit has generally upheld arbitration clauses that require one party to arbitrate but give another party an option. *E.g., Glazer v. Lehman Bros.*, 394 F.3d 444, 454 (6th Cir. 2005) (collecting cases upholding arbitration clauses that required only one party to arbitrate); *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir. 1989) (reversing district court and staying case pending arbitration where arbitration clause allowed one party alone to elect to arbitrate). The fact that the Agreement gives Defendant Matrix a choice to litigate or arbitrate, while Plaintiff must arbitrate, does not shock the conscience of the Court. Significantly, though the arbitration clause gives Defendant Matrix a choice to litigate or arbitrate, if Defendant Matrix chooses to litigate, it must do so in Greenville County, Plaintiff's home forum.

### C. *Whether Arbitration Clause is Unconscionable*

In addition to supporting his consideration argument, Plaintiff also uses the fact that Defendant Matrix has a choice between arbitration and litigation to support his argument that the clause is unconscionable. Further, Plaintiff argues that the clause is unconscionable because it

8

requires that arbitration take place in Detroit, Michigan, which, given the cost and inconvenience, would likely preclude Plaintiff from pursuing this action.

"Under Michigan law, unconscionability is a question of law for the court to decide." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 323 (6th Cir. 1998). For a contract to be unconscionable both procedural and substantive unconscionability must be present. *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 143, 706 N.W.2d 471, 474 (2005).

> Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability. Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.

*Id.* at 144 (citations omitted). "The party seeking to invalidate the provision must show both types of unconscionability." *Andersons, Inc.*, 166 F.3d at 322. Each of these two aspects of unconscionability will be considered below.

### 1. Procedural Unconscionability

When considering procedural unconscionability, a court examines the relative bargaining power of the parties, their relative economic strength, and the alternative sources of supply. *Northwest Acceptance Corp. v. Almont Gravel, Inc.*, 162 Mich. App. 294, 302, 412 N.W.2d 719, 723 (1987). As already noted, procedural unconscionability arises when the weaker party to an agreement has little or no bargaining power and no realistic alternative but to accept the terms of the agreement. *Clark*, 706 N.W.2d at 474-75.

9

Based on the pleadings, it appears as though Plaintiff is the weaker party to the Agreement, at least insofar as Plaintiff's business is smaller than Defendant Matrix' business. From what is before the Court, Plaintiff owns a single automotive paint shop that draws its business from five Upstate counties. In contrast, Defendant Matrix is a Delaware corporation with its principal place of business in Detroit, Michigan, which ostensibly sells paint supplies throughout the country. However, Michigan courts routinely uphold contract provisions, notwithstanding differences in bargaining power. *See St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co. of Michigan*, 115 Mich. App. 278, 284, 320 N.W.2d 244, 247 (1982) ("[M]erely because the parties have different options or bargaining power, unequal or wholly out of proportion to each other, does not mean that the agreement of one of the parties to a term of a contract will not be enforced against him").

Moreover, Plaintiff fails to argue that he lacked a choice when he entered into the Agreement. Defendant Matrix does not have a monopoly on the automobile paint industry. Thus, if Plaintiff did not want to be limited to arbitration, Plaintiff did not have to enter into the Agreement with Defendant Matrix. To demonstrate procedural unconscionability, Plaintiff must demonstrate that he had "no realistic alternative" but to accept the contract. *Clark*, 706 N.W.2d at 475. Because Plaintiff has failed to demonstrate that he lacked alternatives, the arbitration clause is not procedurally unconscionable.[3]

---

[3]Michigan courts have also looked at the format of an arbitration clause when determining if it is procedurally unconscionable. *See High*, 594 F. Supp. 2d at 799. ("Procedural unconscionability is present where the challenged provision is buried in the text of a document, appears in small font, or is not otherwise conspicuous."). In this case, the arbitration clause appears on the signature page of a five-page agreement in a clearly enumerated and delineated paragraph with the bold-faced heading "Arbitration." Thus, the placement of the arbitration clause within the contract fails to render it procedurally unconscionable.

## 2. Substantive Unconscionability

A finding that the arbitration clause is not procedurally unconscionable is sufficient to sustain it against Plaintiff's challenge. However, alternatively, the Court also finds that the Agreement is not substantively unconscionable. When examining substantive unconscionability, "[r]easonableness is the primary consideration." *St. Paul Fire & Marine Ins. Co.*, 320 N.W.2d at 247. Plaintiff argues that the Agreement is substantively unconscionable or unreasonable because it gives Defendant a choice between arbitration and litigation and it mandates that arbitration take place in Detroit, Michigan, the location of Defendant Matrix' principal place of business.

As discussed above, the fact that the arbitration clause gives only Defendant Matrix the choice to arbitrate or litigate is not unreasonable, especially because, if Defendant Matrix chooses to litigate, it must do so in Plaintiff's home venue.

Neither is the choice of forum provision of the arbitration clause unreasonable. "Michigan generally enforces contractual forum-selection provisions, and the party seeking to avoid such a provision bears a heavy burden of showing that the provision should not be enforced." *Elete Enterprises, LLC v. General Steel Corp.*, No. 278946, 2008 WL 4649113 at *4 (Mich. App. Oct. 21, 2008); *Turcheck v. Amerifund Financial, Inc.*, 272 Mich. App. 341, 345-350, 725 N.W.2d 684, 688-690 (2006) (noting same and that inconvenience should not render a forum selection clause unenforceable). Detroit, Michigan is certainly connected to the Agreement. Defendant Matrix has its principal place of business in Detroit, it ships its paint products from Detroit, and Plaintiff sends his orders and payments to Detroit. Admittedly, it might be less expensive for Plaintiff to arbitrate this case in South Carolina, but the added cost of traveling fails to warrant a finding that the arbitration clause is substantively unreasonable. *See HRL Land Or Sea Yachts v. Travel Supreme,*

11

*Inc.*, No. 07-945, 2009 U.S. Dist. LEXIS at *24 (W.D. Mich. Jan. 16, 2009) ("Plaintiff has offered no authority showing that any Michigan court has found the cost of arbitration to be evidence of substantive unconscionability.").

The reasonableness of the arbitration clause is further supported by the fact that the Court here is dealing with a business agreement negotiated to address a specific business venture. Thus, the Court is not faced with one of the scenarios in which courts are more likely to strike down an arbitration clause such as where an employer is attempting to bind his employee to arbitration based on an employee handbook. *E.g.*, *Heurtebise v. Reliable Bus. Computers*, 452 Mich. 405, 550 N.W.2d 243 (1996) (refusing to enforce arbitration clause as to civil rights claims).

Under Michigan law, a "contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." *Montgomery v. Fidelity & Guar. Life Ins. Co.*, 269 Mich. App. 126, 130, 713 N.W.2d 801, 804 (2005); *Lease Acceptance Corp. v. Adams*, 272 Mich. App. 209, 221, 724 N.W.2d 724, 732 (2006) ("[T]he law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement.").

On the fifth page of the Agreement, directly above Plaintiff's signature, was a clearly enumerated arbitration clause, specifying that arbitration would take place closest to Defendant Matrix' principal place of business, which is Detroit. Plaintiff is presumed to have been aware of this when he signed the Agreement. Thus, applying these principles and the presumption in favor of arbitration, the Court concludes that the arbitration clause was reasonable and, therefore, Plaintiff's argument that the clause is unconscionable is without merit.

*D.     Scope of Arbitration Clause*

Having concluded that the arbitration clause is enforceable, the Court must still decide whether Plaintiff's claims fall within the scope of the arbitration clause. Defendants insist that all of Plaintiff's claims against both Defendants are governed by the arbitration clause. Plaintiff failed to respond to this argument, focusing instead on the validity of the arbitration clause.

As noted above, the arbitration clause covers "any unsettled disputes arising under this Agreement." As construed by other courts, the term "arising under" covers a broad range of issues. *E.g., Barth v. First Consumer Credit, Inc.*, No. 278517, 2008 WL 5003026 at *2 (Mich. App. Nov. 25, 2008); *see also Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (collecting cases describing arising under language as broad and holding that, among other claims, claims for fraud and unfair and deceptive trade practices are covered by arbitration clause).

Applying the broad language of the arbitration clause and the rule of construction that any doubts as to the scope of an arbitration clause should be decided in favor of arbitration, the Court finds that all of Plaintiff's claims against Defendant Matrix are subject to arbitration. Plaintiff's first cause of action is for negligent misrepresentation against both Defendants in connection with the territorial rights promised to Plaintiff and set forth in the Agreement. As it relates directly to the terms of the Agreement, this claim clearly arises under the Agreement. Plaintiff next alleges a fraud claim against Defendants arising out of the execution and negotiation of the Agreement. This too "arises under" the arbitration clause. *See Long*, 248 F.3d at 318 (concluding that fraud claim is subject to arbitration). Plaintiff's third cause of action is for breach of contract against both Defendants. The contract referred to is the Agreement. Plaintiff's fourth cause of action is for unfair trade practices against all Defendants. This claim revolves around the allegedly promised

13

exclusive territorial rights set forth in the Agreement. Thus, it is also subject to arbitration. *See id.* at 319 (finding that unfair trade practices claim is covered by broad arbitration clause).

Finally, Plaintiff's fifth claim is for slander of credit as to both Defendants. Plaintiff alleges that Defendants acted negligently and recklessly in telling others that Plaintiff's business was failing, resulting in his default on his loan by Defendant Matrix. That loan was evidenced by a security agreement entered into at the same time and as part of the Agreement. Though this claim less clearly arises under the Agreement than Plaintiff's other claims, the Court cannot say with "positive assurance" that the arbitration clause cannot be construed to encompass this claim. *See Peoples Sec. Life Ins. Co.*, 867 F.2d at 812 (stating rules of construction). Moreover, to the Court's knowledge, the only other Court to consider this question found that a slander of credit claim was governed by a broad arbitration clause. *Griggs v. MBNA Corp.*, No. 02-4088, 2002 WL 32309983 at *2 (S.D. Ill. Oct. 16, 2002). In short, the Court concludes that Plaintiff's final claim also falls within the broad scope of the arbitration clause.

### E.     *Claims Against Defendant Carroll*

The Court's inquiry does not end here, however. As noted above, the arbitration clause was contained in an agreement between Plaintiff and Defendant Matrix. However, Plaintiff's Complaint also names Defendant Matrix' agent, Defendant Carroll. Defendants insist that the claims against Defendant Carroll are also subject to arbitration because they are "intertwined" with the Agreement. Thus, it is clear that Defendant Carroll consents to arbitration. Plaintiff, again, fails to respond to this argument.

"It is well-established . . . that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the

nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate."
*American Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). This principle arises from the doctrine of equitable estoppel.

> [E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the . . . agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Id.* (citation omitted).

As discussed above, Plaintiff's claims against both Defendants arise out of the Agreement. In fact, all of Plaintiff's claims are asserted jointly against both Defendants. Moreover, when Plaintiff refers to Defendant Carroll by name in the Complaint he is referred to as "a sales agent for Defendant" and "agent for Defendant." If Plaintiff had never entered into the Agreement with Defendant Matrix, he would have no claims against Defendant Carroll. Thus, equitable principles necessitate that because Plaintiff is relying on the existence of the Agreement as a basis for his claims, Defendant Carroll, a nonsignatory, should be able to compel arbitration of the claims against him. Accordingly, the claims against Defendant Carroll are also governed by the arbitration clause.

### F. Dismissal or Stay

Because the Court concludes that the arbitration clause is enforceable and governs all the claims asserted in Plaintiff's Complaint, a procedural question that remains is whether the action will be dismissed without prejudice pending arbitration or whether it will merely be stayed pending arbitration.

15

On its face, the FAA appears to require that an action be stayed pending arbitration. *See* 9 U.S.C. § 3 ("the court . . . shall . . . stay the trial of the action until such arbitration"). "Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (affirming district court's dismissal where all issues presented in the suit were arbitrable). Therefore, because all of Plaintiff's claims must be submitted to arbitration and because staying the action would serve no useful purpose, the Court will dismiss the action without prejudice.

## VI. CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court that Defendants' motion to compel arbitration is **GRANTED**. Plaintiff's claims are **DISMISSED** *without prejudice*.

**IT IS SO ORDERED**.

Signed this 14th day of January, 2010, in Spartanburg, South Carolina.

s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE
